# Howell *v.* Carden.

### Statutory Claim Suit.

1. *Deed of trust; recitals of consideration not evidence against attacking creditor.*—The validity of a deed of trust being assailed by a creditor, whose debt was in existence at the time of its execution, its recitals of a consideration are not evidence against him.

2. *Same; burden of proof.*—In a statutory claim suit, where the claimant claims under a deed of trust, the validity of which is assailed by a creditor, whose debt was in existence at the time of its execution, the burden is on the claimant to prove the existence of the alleged debt, and the statements in the note and deed of trust are not available for this purpose.

3. *Same; admissibility of deed as evidence.*—This rule does not justify the entire exclusion of the deed of trust and the note secured by it from evidence in a claim suit founded upon them. The recitals

[Howell v. Carden.]

of a consideration are admissible to prove the fact of the existence of these instruments, so as to show that, as between the grantor and claimant (trustee), there had been an effectual transfer of title to the property claimed; and the instruments themselves are admissible, in connection with other evidence afterwards adduced, as tending to show valuable and sufficient consideration, which was necessary in order to support a claim as against an attacking creditor.

4. *Testimony concerning other notes than the one in question; when competent.*—It is competent for a grantee in a deed of trust, given to secure a note held by him, to testify concerning other notes he formerly held against the grantor, without producing said notes, their existence being a collateral matter. ·

5. *Debt; arises when one pays a debt for another.*—A valid debt against a person may be created as well by paying off his debts to others, at his instance and request, as by advancing money directly to him.

6. *Evidence as to payment of debts admissible.*—It is admissible for a grantee in a deed of trust, attacked as fraudulent, to testify that he had paid debts for the grantor, at his request, and that the money so paid constituted a part of the consideration for the note and deed of trust.

. 7. *Evidence ; when inquiry as to value of property material.*—Where a deed of trust is attacked as fraudulent against the grantor's creditors, the inquiry as to the value of the property conveyed in said deed is material upon the question of the good faith of the transaction.

8. *Same ; use of memoranda to refresh memory of witness.*—It is not permissible for a witness, against the objection of the adverse party, to use for the purpose of refreshing his memory, memoranda made a long time after the date of the transaction to which it referred.

9. *Recorded mortgage of personal property not void because mortgagor is left in possession.*—A recorded mortgage of personal property is not void as against non-secured creditors by reason of the mortgagor being left in possession ; the recording being regarded as a substitute for the change of possession.

10. *Mortgage of personal property; when pronounced void by the court.* A court can not pronounce, as a legal conclusion, that a mortgage of personal property is fraudulent and void as to existing creditors, unless it is shown upon its face, that it was made in trust for the use of the mortgagor, or with the intent to hinder, delay or defraud his creditors.

11. *Deed of trust attacked as fraudulent ; burden of proof.*—When a creditor, attacking a deed of trust given to secure a debt of the grantor as fraudulent against the grantor's creditors, proves the existence of his debt at the time the deed was executed, the *onus* is cast upon the grantee to prove that the debt which the deed purports to secure was justly due at the time of its execution ; but if the attacking creditor goes further and seeks to show that the deed was made with the intent to hinder, delay or defraud the grantor's creditors, the burden of proving this intent is upon such attacking creditor.

12. *Deed of trust not invalidated by provision allowing grantor to retain possession of property.*—A provision in a deed of trust, allowing the grantor to retain possession of the property conveyed, is not such a reservation of benefit to him as invalidates the instrument against his existing or subsequent creditors, if the debt which the instrument purports to secure was justly due, and the grantee was not a party to any intent to use the instrument to hinder, delay or defraud the grantor's creditors.

13. *Deed of trust given to secure bona fide debt not void, although hindering, delaying or defrauding the grantor's creditors.*—Although the

[Howell v. Carden.]

effect of a deed of trust is to hinder, delay or defraud the grantor's creditors, and he executed the instrument with that purpose, yet, if the grantee did not participate in such intent, but accepted the conveyance for the sole purpose of securing a *bona fide* debt to the amount named in the instrument, the deed of trust is not void, either because of its effect upon the rights of other creditors, or because of the fraudulent purpose of the grantor.

14. *Validity of deed of trust; proper inquiries; what can be shown.* On inquiry as to whether a deed of trust was given in good faith, and solely for the security of a just debt, or was vitiated by a purpose to benefit the grantor at the expense of his other creditors, it is competent to show that the grantee had notice that there were other creditors; that the deed covered substantially all of grantor's property, and greatly more than enough to secure grantee's debt; that by the arrangement the grantee unreasonably postponed the collection of his debt; that the grantor was allowed to retain and use the property, and that the property so retained and used was either perishable, or of such a character as to. be profitable in its use. A deed of trust can not be pronounced invalid unless the jury find, from the evidence, that it was made either in trust for the use of the grantor, or with the intent, participated in by the grantee, to hinder, delay or defraud the grantor's creditors.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. JOHN B. TALLY.

Action by James H. Howell, against James W. Bowman. Judgment for plaintiff. An execution was levied on certain personal property in the possession of defendant, and a claim to the property levied on was interposed by H. W. Carden, as trustee under a deed of trust executed by defendant to secure the payment of his promissory note to R. T. Ewing.

On November 15, 1884, previous to the commencement of the present suit by the plaintiff, the defendant, James W. Bowman, executed a deed of trust to the claimant, H. W. Carden for the benefit of one R. T. Ewing, to whom said Bowman was indebted; the consideration named in the deed being $482. The testimony of the claimant tended to show that the consideration of said trust-deed was a past indebtedness due by the said Bowman to Ewing, and that the said indebtedness consisted of various transactions between the said Ewing and Bowman. Some of the items were notes given by said Bowman to one Mrs. Tate, the mother-in-law of Ewing, and transferred by her to Ewing. On these Tate notes a greater rate of interest than 8 per cent. was charged by Mrs. Tate, but in all the demands and debts due Ewing by said Bowman only 8 per cent. interest was charged. It was further shown for the claimant that, at the time of the execution of said trust-deed for the benefit of said Ewing, he did not know of the existence of the plaintiff's debt against said Bowman. The plaintiff objected and duly ex-

[Howell v. Carden.]

cepted to the court's allowing the claimant to introduce in evidence the trust-deed and the note made by said Bowman to said Ewing on November 15, 1884, which evidenced Bowman's indebtedness to Ewing. Upon the examination of said R. T. Ewing, he was allowed, against the plaintiff's objection and exception, to refresh his memory by reference to two memoranda—one made shortly after the transactions which resulted in the execution of the trust-deed, and the other just a short time before the trial of the present suit, which took place in 1890. This witness further testified against the objection and exception of the plaintiff, that there had been various transactions between him and said Bowman, and that there were other notes given by said Bowman to him, witnessing his prior indebtedness.

The court, among other things, charged the jury as follows: "The burden is first upon the plaintiff to make out his case. If the evidence satisfies you that the sheriff's deputy, having an execution issued by the justice of the peace on a judgment in favor of plaintiff against the defendant, found the property in controversy in the possession of the defendant, and he levied that execution upon such property, then, *prima facie*, that property would be liable to satisfy such execution. This would make out plaintiff's case. The burden would then be shifted upon the claimant to show a better claim to such property. If, upon considering the trust-deed under which claimant claims title to the property, in connection with the evidence offered with it, you find the same was given to secure a debt justly due from the defendant, then you would be authorized to find that the property, without more evidence, belongs to the claimant. Here the question of fraud in the execution of said trust-deed presents itself. The plaintiff insists that upon the whole evidence such conveyance is fraudulent and void. The burden of proving it is upon him. Upon proving a valuable consideration in the form of a just debt due from Bowman to Ewing, and the execution of the instrument to secure the same, the law presumes it was done in good faith, without further evidence, and the burden is cast upon the plaintiff to prove the fraud—to prove a state of facts which will warrant you in drawing the conclusion that it was in bad faith, or done for the purpose of hindering, delaying, or defrauding creditors of Bowman." The plaintiff excepted to this portion of the general charge of the court, and separately excepted to the court's refusal to give each of the following charges requested by him in writing:

[Howell v. Carden.]

(1.) "If the jury find, from the evidence, that, at the time of the execution of the deed of trust under which Capt. Ewing claims the property that was levied upon by the execution in favor of Howell, Howell was a creditor of Bowman, and Ewing knew that Bowman was in failing circumstances, and took the deed of trust upon all of Bowman's visible and tangible property, stipulating in said trust-deed for a postponement of foreclosure of said trust-deed for a period of twelve months, and permitted Bowman to retain the possession of the personal property mortgaged, and Howell's execution was levied upon the property described in the officer's return on said execution, Ewing is not entitled to recover in this action." (2.) "If the jury find from the evidence that the property in controversy was of a perishable nature, and it, with other property included in the deed of trust, was all the visible property that Bowman had, and he was permitted to remain in possession of the property, and use it for his own benefit, by the trustee or Capt. Ewing, and Capt. Ewing knew at the time of the execution of the deed of trust that Bowman had other creditors, who would be hindered or delayed in the collection of their debts, the trust is void as to the property levied on, and, if it was in possession of Bowman at the time of the levy of the execution, that the plaintiff is entitled to recover in this action." (3.) "That unless the jury find, from the evidence, that the notes in evidence, claimed by Ewing to have been paid off by him, were based on a valuable consideration, then they are no part of the consideration of his debt claimed by him to support the claim suit. The mere fact that he paid them off at the request of Bowman does not raise any consideration in favor of the claimant." (4.) "If the jury find, from the evidence, that, at the time of the execution of the deed of trust upon which the claimant relies in this case, (to-wit, the trust-deed executed on the 15th November, 1884) Bowman was in failing circumstances, and Ewing knew it, and knew that Bowman had other creditors, who would be hindered or delayed in the collection of their debts against Bowman, and Ewing knew that the property conveyed by said trust-deed was all, or almost the whole, of the visible and tangible property that Bowman owned, and that the property conveyed by the deed of trust was equal in value to fifty per cent. more than the debt secured by it, and that Ewing gave Bowman twelve months' time within which to pay the debt secured by the mortgage or trust-deed, then the deed of trust is void, and the claimant can't recover in

this action." (5.) "That if Bowman executed the deed of trust to hinder, delay, or defraud creditors, then if any fact or circumstance which, if followed up by Ewing, would have led him to discover the fraudulent intent of Bowman, had come to Ewing's knowledge previous to the execution of said deed of trust, in that event Ewing would be held in law as being a party to the fraud, and the deed of trust void as to plaintiff." (6.) "If the jury find, from the evidence, that Bowman executed the deed of trust for the purpose of hindering or delaying his other creditors, (if they find he had other creditors,) and Ewing knew it, or knew facts that were sufficient to excite suspicion in the mind of a reasonable man as to the good faith of Bowman in executing the deed of trust, which, if followed up, would have led to a discovery of his bad faith, then Ewing is chargeable with knowledge of the bad faith of Bowman in executing said trust-deed, and the claimant cannot recover in this action." (9.) "Every man is presumed to intend the necessary consequence of his acts ; and if an act necessarily delays, hinders, or defrauds creditors, then the law presumes that it is done with the intent to delay, hinder, or defraud them." (11.) "If the jury, from the evidence in this cause, believe that, at the time the execution in favor of Howell was levied upon the property in controversy, the the property was in possession of Bowman; that the plaintiff thereby established a *prima facie* case, and it then became incumbent upon the claimant to establish his right to the property, and in order to do so he must show not only the existence of a debt, but that it is a valid debt, and that the conveyance was executed in good faith to secure that debt, and for no other purpose, before the claimant is entitled to recover ; and if the jury find, from the evidence, that the deed of trust was executed and accepted for the purpose of hindering or delaying other creditors of Bowman, if they find that Bowman had other creditors, or for the purpose of tying up the property of Bowman from his other creditors, Bowman was permitted to retain the possession of the property mortgaged, then the claimant is not entitled to recover." (14.) "That unless the jury find, from the evidence, that the deed of trust introduced in this case was executed for a valuable consideration and in good faith, they must find for the plaintiff." (17.) "That if the plaintiff has made out a *prima facie* case in this action, under the charge of the court, then it devolves on the claimant to show, by proof to a reasonable certainty, that his claim suit is based on a

[Howell v. Carden.]

claim for valuable consideration, and that his deed of trust was executed in good faith." (20.) "The law does not permit a person in failing circumstances to mortgage all his property to pay a selected creditor, and to put off the law-day of the mortgage to a distant day, and in the mean time retain the possession for his own benefit; and a mortgage so doing, when it is shown that the grantee had notice of the insolvency of the debtor, or was put on inquiry as to the condition of the debtor, is void as to existing creditors." (22) "That the giving of the deed of trust by Bowman to H. W. Carden for the benefit of Ewing upon all of his property was an admission on the part of Bowman of his inability to pay all of his debts, or at least renders his ability to pay doubtful ; and, if Ewing took such a deed upon all of Bowman's property, Ewing was put on notice or inquiry as to Bowman's creditors." (23) "A particular intent to defraud creditors is not necessary, in order to render a conveyance fraudulent and void as against them. If the necessary consequence of the deed is to hinder and delay them, then it is fraudulent and void as to such existing creditors." (24) "The use to which a deed is applied is a circumstance or fact which the jury may look to in determining the intent with which it was made ; and if the jury find from the evidence, that Ewing and Bowman have made use of the deed of trust last executed by Bowman to Carden for the benefit of Ewing to tie up the property of Bowman from his other creditors, then they are authorized to infer that it was executed by Bowman, and received by Ewing, for the purpose of hindering or delaying the other creditors of Bowman, if they find that Bowman had other creditors." (*f*) "If the jury find, from the evidence, that Ewing's debt against Bowman, that the deed of trust was executed to secure, is tainted with usury, then Ewing is not a *bona fide* purchaser for value of the property included in his said trust-deed, and it can not prevail against the plaintiff in this suit, if the jury find from the evidence that plaintiff was a creditor of Bowman at the time it was executed." There was judgment for claimant, and plaintiff appeals.

MATTHEWS & DANIEL, for appellant.

REEVES & CARDEN, *contra*.

WALKER, J.—An execution upon a judgment rendered by a justice of the peace in favor of the appellant and

against J. W. Bowman, was levied upon personal property which was in the possession of Bowman. A claim to the property levied on was interposed by H. W. Carden, as trustee, under a deed of trust by which Bowman had undertaken to convey certain property, including that levied on, to secure the payment of his promissory note to R. T. Ewing. The contest was upon the claim so interposed. Exceptions were reserved to rulings of the Circuit Court in the admission of evidence, and in giving and refusing charges.

1. The objections to the introduction in evidence of the deed of trust to the claimant, and of the note which it purported to secure, were properly overruled. The subsequent introduction of independent evidence of the existence of a valuable consideration to support those instruments removed the principal ground of the objections. The validity of the deed of trust being assailed by the plaintiff as a creditor, whose debt was in existence at the time of its execution, its recitals of a consideration were not evidence against him. The *onus* was on the claimant to prove the existence of the alleged debt to Ewing, and the statements in the note and in the deed of trust could not help him in this regard. *Bolling v. Jones,* 67 Ala. 508. The plaintiff was entitled to have the jury instructed to this effect. But the rule that the recitals of consideration are not evidence against an attacking creditor would not justify the entire exclusion of the instruments. They were admissible to prove the fact of their existence, so as to show that, as between Bowman and the claimant, there had been an effectual transfer of title to the property in question. It was necessary for the claimant to go further, and prove the additional fact, necessary to the support of his claim as against the plaintiff, that the mortgage was supported by a valuable and sufficient consideration. The instruments were admissible in connection with the evidence, afterwards adduced, tending to show such a consideration.

2. It was competent for the witness Ewing to speak of one of the former notes he had held against Bowman without producing it. The fact of the existence of such note was a collateral matter, and the rule requiring the production of the note itself did not apply.— *Wollner v. Lehman,* 85 Ala. 274; 4 South. Rep. 643; 3 Brick. Dig., p. 439, § 486. A valid debt against a person may as well be created by paying off his debts to others, at his instance and request, as by advancing money directly to him. There was no error in permitting the witness Ewing to state that he had paid debts for Bowman, and that the money so used constituted

part of the consideration for the note and deed of trust. The older deeds of trust on the land were admissible upon the question of the value of the property covered by the deed of trust to the claimant. The existence of prior incumbrances lessened the value of the property taken as security. The inquiry as to the value of the property conveyed as security was material upon the question of the good faith of the transaction.

3. One of the memoranda, which the witness Ewing was permitted to use for the purpose of refreshing his recollection, was made in the fall of the year preceding the trial, and long after the date of the transaction to which it referred. It is not permissible for a witness, against the objection of the adverse party, to use a memorandum to revive his memory, unless it was made at the time of the transaction concerning which he is questioned, or so recently thereafter that it may be inferred that the matter was then fresh in in his mind.—*Calloway v. Varner*, 77 Ala. 541 ; *Jaques v. Horton* 76 Ala. 238 ; 7 Amer. & Eng. Encyc. of Law, 111. It is plain that a contemporaneous record of a transaction as it was originally impressed upon the mind, must be much more trustworthy than a memorandum made so long thereafter as to be itself but the result of an effort of the memory. The former leads the mind of the witness directly to the matter sought to be recalled, while the latter does not go beyond a former recollection, which may not have been distinct. The authenticity of a memorandum, to which a witness may look for a revival of his memory, should be vouched for by the fact that it was made so near to the date of the transaction to which it refers, that the original impression thereof could not have grown dim in the mind of the person who made it. A witness exposes himself to the hazard of being misled when he relies on a memorandum made at a time when his memory may already have become uncertain or indistinct. The witness should not have been permitted to refer to the memorandum mentioned above.

4. The owner of personal property has the right to mortgage it to secure the payment of his debts. To protect creditors and purchasers without notice, the statutes provide for the record of such conveyances.—Code, 188 , §§ 1806–1814. These statutory provisions impliedly recognize the right of the mortgagor to stipulate in the instrument for his retention of possession of the mortgaged property, or to retain such possession with the consent of the mortgagee. The courts can not pronounce a recorded mortgage of personal property void, as against unsecured creditors, merely

[Howell v. Carden.]

because the mortgagor is left in possession ; for the law permits that to be done, the recording being regarded as a substitute for a change of possession·—Jones, Chat. Mort., (3d Ed.), §§ 329–380 ; *Benedict v. Renfro*, 75 Ala. 121. It is plain that this power of incumbering personal property, the possession of which is retained by the owner, may be readily perverted to the unlawful purpose of securing an unauthorized benefit to the grantor, or of hindering, delaying, or defrauding his creditors. But the law sanctions the *bona fide* use of this form of security, even though the debtor may be embarrassed or insolvent. The legitimate scope of such an instrument, as against the grantor's creditors, is the *bona fide* appropriation of property to secure a debt honestly due. If any part of the purpose of the parties thereto is that it shall avail, or be used for the ·ease or favor of the grantor, it is void as to his creditors.—*Reynolds v. Crook*, 31 Ala. 634. Whenever such purpose, or a trust for the use of the grantor, appears upon the face of the instrument, the court, without looking further, pronounces it void as against the grantor's creditors. Thus, a mortgage of merchandise, which expressly or impliedly leaves the mortgagor in possession, and free to make sales from the mortgaged property for his own benefit, in its very nature involves such a reservation of a benefit to the mortgagor as invalidates the instrument, and the court will pronounce it invalid as a conclusion of law.—*Benedict v. Renfro*, 75 Ala. 121 ; *Owens v. Hobbie*, 82 Ala. 466 ; 3 South. Rep. 145. If, however, the mortgage of such property provides for the sale thereof by the mortgagor for and on account of the mortgagee, and that the proceeds of such sales be applied to the mortgage debt, then such mortgage is not fraudulent on its face.—*Murray v. McNealy*, 86 Ala. 234 ; 5 South. Rep. 565. A mortgage of personal property can not be pronounced fraudulent without evidence *aliunde* to this effect, unless it appears from an inspection thereof that the purpose of the parties embraces the reservation of a benefit to the mortgagor, or that there was an intent to have the transaction go beyond the legitimate object of securing a debt, and to operate, in part at least, to hinder, delay or defraud the mortgagor's other creditors. Unless such infirmity is disclosed upon the face of the instrument, the question of its validity as against the grantor's other creditors is one of fact, to be determined on the evidence as to the situation of the parties and the circumstances attending the transaction. In *Wiley v. Knight*, 27 Ala. 336, the facts were that a creditor, who had implied notice that the debtors were insolvent, took from them a mortgage of substan-

[Howell v. Carden.]

tially all their property, the value of which greatly exceeded the amount of the debt to be secured. The law-day of the mortgage was postponed nearly six years; the possession, in the mean time, remaining in the mortgagors. The transaction was held to be fraudulent, because its necessary effect was to tie up more of the debtor's property than was reasonably necessary to secure the debt, and because of the unauthorized benefit reserved to the grantors. If the question as to whether there was fraud in the transaction is triable by the court, and it appears from the evidence that a creditor, knowing that there are other creditors who may be delayed or hindered in the collection of their debts, or having knowledge of some fact calculated to put him on inquiry, and thus charge him with notice, yet takes a mortgage whereby he ties up greatly more of the debtor's property than is reasonably sufficient to secure his debt, and in the mean time permits the debtor to remain so long in the possession and enjoyment of the property that the necessary consequence of the transaction is to favor the debtor, and to help him to baffle his other creditors, then such mortgage will be declared fraudulent in fact as against such other creditors.—*Reynolds v. Welch*, 47 Ala. 200. The same result follows whether the unauthorized operation of the instrument is disclosed by the terms thereof, or by evidence of the circumstances connected with its execution. In the present case, there is nothing in the impeached deed of trust, as it is described, without being copied, in the bill of exceptions, to authorize the court to pronounce it fraudulent on its face. The question, then, as to the validity of the transaction, was one of fact to be submitted to the jury. When the instrument shows upon its face that it was made in trust for the use of the mortgagor, or with the intent to hinder, delay, or defraud his creditors, the court must pronounce the legal conclusion that it is invalid as to such creditors. When such infirmity is not disclosed upon an inspection of the instrument, and it is attacked as fraudulent as against the mortgagor's creditors, unless both the law and the facts are submitted for decision by the court, it is for the jury to ascertain from the evidence as to the circumstances attending its execution whether, as matter of fact, it was made in trust for the use of the mortgagor, or with the intent, participated in by the mortgagee, to hinder, delay, or defraud the mortgagor's creditors.

When the attacking creditor proves the existence of his debt at the time the mortgage was executed, the *onus* is then cast on the mortgagee to show that the debt which the mort-

gage purports to secure was justly due at the time of its execution. If this proof is made, and the evidence stops here, the attack upon the mortgage is not sustained. But the assailing party may go further, and prove that the mortgage was made with intent to hinder, delay, or defraud the creditors of the mortgagor. In this inquiry as to the intent, the burden of proof is shifted upon the complaining creditor. *Moog v. Farley*, 79 Ala. 246 ; *Gordon v. Tweedy*, 71 Ala. 202. The charge of the court on this subject was correct. Charges 11 and 17 requested by the plaintiff were properly refused, because each of them asserts, in effect, that when the plaintiff made out a *prima facie* case the burden was then cast upon the claimant, not only to prove that the secured debt was justly due, but also to negative the existence of a fraudulent purpose or intent in the making of the mortgage.

The mere retention of possession by the mortgagor, or a provision in the mortgage to that effect, is not such a reservation of a benefit to him as invalidates the instrument against his existing or subsequent creditors. Such a reservation of possession until default is authorized by the law, if the debt which the instrument purports to secure was justly due, and the mortgagee was not a party to any intent to use the instrument to hinder, delay, or defraud the mortgagor's creditors. It is the existence of such actual or necessarily imputed evil intent which will justify the impeachment of the instrument as a fraud upon creditors. It is not permissible for one creditor to use his claim for the purpose of shielding the debtor's property from his other creditors. Though one of the objects of such creditor is to secure the payment of his own debt, yet, if the arrangement by which this is done involves the intent on his part to aid the debtor in holding his property against his other creditors, then such arrangement is fraudulent and void as to creditors participating therein. To be valid, the arrangement must be "without any intent to lock up the property from creditors for the use of the debtor." When the creditor taking the security knows that there are other creditors who may be delayed or hindered in the collection of their debts, or has knowledge of facts or circumstances calculated to put him on inquiry, and thus charge him with notice, the arrangement which he makes must not go beyond the permissible purpose of securing his own demand; and if, with such knowledge or notice, he participates in a purpose of the debtor to thwart his other creditors, and with such intent takes a mortgage which ties up greatly more of the debtor's property than is reasonably sufficient to secure his debt,

and in the meantime permits the debtor to hold and use the property for his own benefit, so that the necessary result is to favor the debtor, and to help him to baffle his other creditors, then the transaction is fraudulent and void as against other creditors. If it is any part of the purpose of the mortgagee, in taking the mortgage under such circumstances, to secure thereby a benefit to the mortgagor, which involves the hindering, delaying, or defrauding of any other creditors, the instrument can not stand against the attack of such other creditors.—*Benedict v. Renfro*, 75 Ala. 121; *Constantine v. Twelves*, 29 Ala. 667; *Price v. Mazange*, 31 Ala. 701; *Reynolds v. Welch*, 47 Ala. 200; *Price v. Masterson*, 35 Ala. 483; *Seaman v. Nolen*, 68 Ala. 463; *Hayes v. Westcott*, 91 Ala. 150; 8 So. Rep. 337. Though the natural effect of the transaction was to hinder, delay, or defraud the grantor's creditors, and though he executed the instrument with that purpose, yet, if the grantee did not participate in such intent, but accepted the conveyance for the sole purpose of securing a *bona fide* debt of the amount named in the instrument, then the security could not be pronounced invalid, because of its effect upon the rights of other creditors, or because of the fraudulent purpose of the grantor. *Shealy v. Edwards*, 75 Ala. 411.

Whether the mortgagee participated with the debtor in an intention to have the mortgage serve the purpose of putting the property included therein in such a position as to secure an unauthorized benefit to the mortgagor, or to hinder, delay or defraud other creditors, is generally a matter of inference or deduction from the circumstances attending the transaction. Such transactions may be presented in various aspects, and it is not for the court to suggest what facts may warrant unfavorable inferences. On the inquiry as to whether the mortgage was given in good faith, and solely for the security of a just debt, or was vitiated by a purpose to benefit the mortgagor at the expense of his other creditors, it is competent to show that the preferred creditor, having notice that there were other creditors, took a mortgage covering substantially all of the debtor's property, and greatly more than enough to afford him ample security; or that by the arrangement he unreasonably postponed the collection of his demand, and in the meantime allowed the mortgagor to retain and use the property; or that the whole or a material part of the mortgaged property which was retained and used by the mortgagor was perishable, or of such a character as to be profitable in its use. It is for the jury to draw the deductions or inferences from the facts

[Howell v. Carden.]

proved. The impeached instrument can not be pronounced invalid unless they find from the evidence that it was made in trust for the use of the grantor, or with an intent, participated in by the grantee, to hinder, delay, or defraud the grantor's creditors.

It is unnecessary to review in detail the numerous charges given and refused. The propositions contained in most of them may be readily tested by the rules above stated. Defects in the several charges requested by the plaintiff will be briefly noted. Charges 1, 2, 4, 5, 6, and 20, which were refused, were faulty in failing to predicate the existence of an intent on the part of the mortgagee to benefit the mortgagor, or to hinder, delay or defraud, his creditors. Charges 9 and 23, requested by plaintiff, make the effect of the instrument upon the rights of other creditors the test of its validity, without regard to the real intent of the grantee therein. If the debt to Ewing was based upon his payment in good faith of claims against Bowman, at Bowman's request, such payment was a valuable consideration moving from Ewing, which was not vitiated by the fact that the claims so paid off in good faith were not themselves supported by valuable considerations. Charge 3 of the plaintiff's series was incorrect in asserting the contrary of this proposition. Plaintiff's charge 14, was properly refused because there were several deeds of trust in evidence, and the charge did not refer specifically to the one which was the matter of contest. Charge 22 assumes that the deed of trust in question covered all of Bowman's property. There was evidence tending to show that some of his property was not included. Charge 24 was argumentative. Unless the usury in the debt to Ewing was allowed and received for the purpose of fraudulently swelling the debt, it would not have effect to avoid the deed of trust.—*Harris v. Russell*, 93 Ala. 59; 9 So. Rep. 541. Charge *f*, on this subject, was properly refused.

Reversed and remanded.