(104 So. 433)

## LOUISVILLE & N. R. CO. v. CUNNINGHAM HARDWARE CO. (1 Div. 361.)

(Supreme Court of Alabama. April 16, 1925. Rehearing Denied May 28, 1925.)

**1. Railroads ⬅344(1)—Complaint need only show duty, negligence as proximate cause, and resultant damage.**

In action against railroad for damage from collision, complaint need only state conditions from which duty is shown, negligence as proximate cause, and the resultant damage, and need not show the quo modo.

**2. Railroads ⬅330(2)—Public entitled to rely on flagman at crossing.**

In view of interference with traffic and danger to others in stopping at railroad crossings, where traffic is heavy, to look and listen, and duty of travelers to look for and obey watchman's signals which the public disregard at their own risk, public is entitled to rely on him, if at his post, and usually need not look elsewhere for discovery of danger from passing train.

**3. Railroads ⬅330(2)—Public bound to take reasonable precautions, if watchman absent or inattentive.**

Although public is entitled to rely on signals of watchman at railroad crossing, they must take reasonable precautions if he is absent or apparently inattentive to duty.

**4. Railroads ⬅330(2)—Invitation to proceed over crossing may be implied from conduct of watchman.**

In approaching railroad crossing, invitation to cross may be implied from conduct of watchman at his post of duty, although driver may not ignore other suggestions of danger.

**5. Railroads ⬅344(10)—Plea of contributory negligence at crossing demurrable.**

In action for damages from collision on railroad crossing, count alleging negligence of watchman, in failing to give warning, was sufficient to relieve driver prima facie of duty to stop, look, and listen, and pleas of contributory negligence in failing to stop, look, and listen were demurrable when not alleging facts creating such duty.

**6. Railroads ⬅351(18)—Instruction as to implied invitation by watchman to cross not erroneous.**

Instruction, that owner of truck struck by train at crossing could recover, if watchman extended to driver an invitation to cross by express signal, or conducted himself in such way as to be an implied invitation, was not erroneous, as importing that implied invitation was sufficient, if taken, whether or not it would have been taken in exercise of ordinary care.

**7. Trial ⬅133(2)—Argument unsupported by evidence not prejudicial in view of prior explanation and court's instructions.**

Argument of plaintiff's counsel, that if railroad's employees admitted negligence they would lose their jobs, though standing alone and unsupported by evidence, not legitimate

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

argument, did not require reversal, where coupled with prior explanation that it was made by way of inference based on legal duty of employer not to retain negligent servants in his employ, and with court's instruction that there was no evidence of anybody losing their jobs.

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Action for damages by the Cunningham Hardware Company against the Louisville & Nashville Railroad Company. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

Smiths, Young, Leigh & Johnston, of Mobile, for appellant.

Count B does not allege any act of negligence on the part of the watchman, and fails to state a cause of action. Va.-Car. Chem. Co. v. Mayson, 7 Ala. App. 588, 62 So. 253; Maddox v. Chilton Warehouse Co., 171 Ala. 216, 55 So. 93; T. C. I. Co. v. Smith, 171 Ala. 251, 55 So. 170. A person is not excused from stopping, looking, and listening by the presence of a watchman, unless the watchman does something indicating that it is safe to cross. L. & N. v. Webb, 90 Ala. 185, 8 So. 518, 11 L. R. A. 674; L. & N. v. Calvert, 172 Ala. 597, 55 So. 812; L. & N. v. Cloud, 207 Ala. 373, 92 So. 550; Wabash v. Heulsmann (C. C. A.) 290 F. 165; Union Pac. v. Rosewater, 157 F. 168, 84 C. C. A. 616, 15 L. R. A. (N. S.) 803, 13 Ann. Cas. 851. The fact that an obstruction may block the view of an approaching train does not justify failure to stop and listen. Cunningham v. L. & N., 209 Ala. 327, 96 So. 358; A. C. L. v. Jones, 202 Ala. 222, 80 So. 44; C. G. W. v. Biwer (C. C. A.) 266 F. 965. It is negligence per se to fail to stop, look, and listen. Hurt v. Sou. Ry., 205 Ala. 179, 87 So. 533. It was error to charge that defendant would be liable if the watchman conducted himself in such a way as to amount to an implied invitation to cross. L. & N. v. Webb, 90 Ala. 185, 8 So. 518, 11 L. R. A. 674. Remarks of plaintiff's counsel were improper. E. T., V. & G. v. Bayliss, 75 Ala. 466; Moody v. A. G. S., 99 Ala. 553, 13 So. 233.

Inge & Bates, of Mobile, for appellee.

Negligence may be averred in general terms. V.-C. Chem. Co. v. Mayson, 7 Ala. App. 588, 62 So. 253. Where the watchman signals to proceed, or so conducts himself that the driver understands it to be a signal to proceed, the driver need not stop, look, and listen. L. & N. v. Stewart, 128 Ala. 313, 29 So. 562; A. G. S. v. Anderson, 109 Ala. 299, 19 So. 516; L. & N. v. Webb, 90 Ala. 185, 8 So. 518, 11 L. R. A. 674; Cunningham Hdw. Co. v. L. & N., 209 Ala. 327, 96 So. 358. If intervening objects cut off the view, the fruitless attempt to look before crossing

is excused. G. P. v. Lee, 92 Ala. 262, 9 So. 230; L. & N. v. Richards, 100 Ala. 365, 13 So. 944; C. of G. v. Hyatt, 151 Ala. 362, 43 So. 867; L. & N. v. Lloyd, 186 Ala. 119, 65 So. 153; S. A. L. v. Hudgins, 10 Ala. App. 298, 64 So. 666.

BOULDIN, J. The suit is in damages for injury to a truck from collision with a locomotive or tender of defendant at a grade crossing of a public street in the city of Mobile. The decision on former appeal appears in Cunningham Hardware Co. v. L. & N. R. R. Co., 209 Ala. 327, 96 So. 358.

[1] Count B lays the accident to the negligence of the watchman or flagman of defendant, one Reil, who was stationed at the crossing for the purpose of giving warning of the approach of engines and cars of defendant, and who was then and there acting within the line and scope of his employment. The demurrer takes the point that the averment of negligence is general—a mere conclusion of the pleader. The general rule, well known and long established, is that a complaint is sufficient when it states conditions from which the duty is shown, negligence as the proximate cause of the injury, and resultant damage. The quo modo need not be shown. The count before us shows the duty to give warning, and sufficiently avers injury resulting from negligence of the watchman in giving or failing to give warning signals, proximately resulting in the injury. Cases arising under certain sections of the Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), wherein a case must be made within the terms of the act, and in such form as to reasonably advise the defendant of the negligence relied upon, are not in point here.

Pleas 2, B, C, and D, directed to counts A and B, set up contributory negligence on the part of the driver of plaintiff's truck in failing to stop, look, and listen, or to exercise his senses of sight and hearing before proceeding into the zone of danger. Demurrers were interposed to these pleas after the reversal of the cause on former appeal. The grounds of demurrer were: First, that there was no duty on the driver of the truck to look and listen before driving upon the track; and, second, that he had the right to rely upon the signals of the watchman.

Count A averred that the watchman negligently signaled the driver that the crossing was clear. Count B relied upon a general averment of negligence as above shown. The second ground of demurrer therefore is directed to count A and is inapt as to count B. Two questions arise: First. When the complaint counts upon the negligence of the watchman in giving a signal to proceed, is a plea setting up the general duty to stop, look and listen and answer thereto? Stated differently, is the driver of a vehicle approach-

ing a crossing justified in relying upon the signal, and freed from the duty to look out for passing trains? Second. Where the complaint counts upon general negligence of the watchman, is a plea setting up the general duty to stop, look, and listen, as a proximate contributing cause, sufficient? This brings to view important legal questions going to the duty of both parties at such crossings, as well as the proper method of presenting such cases in pleading.

[2] Confining ourselves to grade crossings in cities, we may say the duty of both parties to observe due care under modern conditions is more and more insistent. We deal here only with the case of a watchman —a person placed at the crossing to aid in the common use of the crossing by the railroad in the conduct of its public business, and by the public as a public passway. Speaking broadly, we think the presence and use of a watchman implies several things. Among these is the occasion for a watchman —that the crossing is beset with such dangers that he is there in response to a general duty or by direction of legal authority. Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485. The danger to the public may be enhanced by the constant or frequent presence of obstructions to observation, by numerous tracks, by much noise, or by heavy street traffic.

Again, the presence of a flagman is in some sense an invitation to rely upon his directions. In fact, the general rule may be well declared, that it is the duty of a person approaching the crossing to keep a lookout for his signals and obey them. His disregard of signals is at his peril. To our thinking, this is inconsistent with the general duty to be looking elsewhere for approaching trains. Again, one aim is to facilitate traffic. Stopping to look or listen in the midst of heavy traffic may greatly impede travel, or even endanger persons who do rely upon the signals of the watchman. This brings us to say the rule should be uniform. The public should know whether to trust or mistrust him, whether to rely upon him or look out for themselves, which involves taking note of conditions to determine what precautions are necessary. Upon principle and, we think, upon good authority, when a watchman is at his post of duty the public is invited to use his eyes and ears in the discovery of danger from passing trains. One aim being to keep travel moving so far as safety warrants, a person may, as a rule, proceed in the absence of a stop signal. Cunningham Hardware Co. v. L. & N. R. R. Co., 209 Ala. 327, 96 So. 358; Birmingham Southern R. Co. v. Harrison, 203 Ala. 284, 82 So. 534; L. & N. R. R. Co. v. Stewart, 128 Ala. 313, 29 So. 562; A. G. S. R. Co. v. Anderson, 109 Ala. 299, 19 So. 516; 33 Cyc. p. 1028, note 48, and later annotations thereto; 22 R. C. L. p. 1044, § 277; note 10 Ann. Cas. 418; note 13 Ann. Cas. 854; note 41 L. R. A. (N. S.) 359.

[3] But we are reminded in argument that count B, charging negligence in general terms, covers a case where the watchman is negligently absent from his post of duty, or noticeably inattentive to duty. Although the distinction has not been always observed, we think there is a distinction properly drawn in such cases. If the watchman is not present, he cannot be said to be on duty so that the public may use his eyes and ears as a protection against danger. True, his employer may be responsible for initial negligence by the watchman's failure to be on duty, but this is not to the point in dealing with contributory negligence of the other party. His absence is notice that a proper watch may be wanting, and the duty arises to take such precautions as reasonable prudence may dictate under the circumstances. So, also, if it is apparent the watchman is not attentive to duty by reason of his position or attitude, or by having his attention diverted by others, full reliance should not be placed upon the absence of warning from him. This, we think, the sound principle underlying the carefully considered and much cited case of L. & N. R. R. Co. v. Webb, 90 Ala. 185, 8 So. 518, 11 L. R. A. 674, the case of a footman walking in front of a moving train open to full observation, while the watchman was sitting inattentive.

[4] Our cases above cited have announced that the driver of a vehicle is relieved of the general duty to stop, look, and listen by a signal that the way is clear. We are now holding that the same invitation to proceed may be implied by the conduct of the watchman at his post of duty. We do not mean to hold that the driver may close his eyes and ears, and ignore suggestions of danger which may come to him while looking to the watchman for guidance, such as hearing the statutory signal of a ringing bell, or a sounding whistle, or any other circumstance which would lead a man of ordinary care to take other precautions. But we think that, in the absence of notice not to rely on the watchman there present, the driver may do so, and is not guilty of contributory negligence in failing to take other active measures to insure his safety. The final solution of the matter is usually a question for the jury under proper instructions in the given case.

[5] Taking up the pleadings before us, count B, charging negligence of the watchman stationed at the crossing to give warnings, and acting within the line of his employment, states a prima facie case relieving the driver from the active duty to stop, look, and listen for approaching trains. Pleas of contributory negligence should aver some facts under which such duty would obtain,

or make an issue for the jury on contributory negligence—want of ordinary care. We find no error in sustaining· demurrers to these pleas.

[6] The court charged the jury, in effect, that plaintiff could recover, if the watchman extended to the driver an invitation to cross the track, either by an express signal, "or that he conducted himself in such way as to be an implied invitation to him to come on across the track." We do not concur in the view of appellant that the quoted instruction imports that the implied invitation was sufficient, if the driver so took it, regardless of whether it would be so taken in the exercise of reasonable care. The instruction is a direction to the jury to determine whether the watchman's conduct was such as to be in fact an implied invitation to cross.

[7] The statement of plaintiff's counsel in argument that "if defendant's employees were guilty of negligence and came into court and admitted it, they would lose their jobs," standing alone as a statement of fact, unsupported by evidence, passed the bounds of legitimate argument. So viewed, it was a reflection on the employer as well as the witnesses, well calculated to work injury to defendant and should work a reversal of the cause under the rule declared in E. T., V. & G. Ry. Co. v. Bayliss, 75 Ala. 466. But coupled with a prior explanation that such statements were made by way of inference based on the legal duty of an employer not to retain negligent servants in his employ, and coupled with the court's instruction "that there was no evidence of anybody losing their jobs," we do not find such affirmative error in the court's ruling as to warrant a reversal.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.